IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOLICK DISTRIBUTORS CORPORATION (Also Known As BOLICK DISTRIBUTORS, INC.)** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **ARMSTRONG HOLDINGS, INC., ARMSRONG WOOD PRODUCTS, INC., and ROBBINS HARDWOOD FLOORING, INC.** | : | **NO. 02-5135** |
| **Defendants.** | : | |

## ORDER AND MEMORANDUM

### O R D E R

**AND NOW**, this 15th day of May, 2003, upon consideration of defendants' Amended Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Document No. 20, filed October 17, 2002), and the related submissions of the parties, **IT IS ORDERED** that defendants' Amended Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. The Clerk of the United States District Court for the Eastern District of Pennsylvania is directed to **TRANSFER** the case to the United States District Court for the Northern District of Texas.[1]

### MEMORANDUM

This case arises out of allegations of Federal antitrust violations in connection with the manufacture and distribution of hardwood flooring in the Gulf Coast region, which includes Louisiana, Mississippi, Alabama, and Florida (the "Territory"). Plaintiff, Bolick Distributors, Inc.

---

[1] Defendants' Motion to Dismiss Count 1 of Plaintiff's First Amended Complaint (Document No. 13, filed October 24, 2002) is currently pending. That Motion is transferred to the United States District Court for the Northern District of Texas for disposition.

("Bolick"), alleges, inter alia, that Armstrong Holdings, Inc. ("AHI"), Armstrong Wood Products, Inc. ("AWP"), and Robbins Hardwood Flooring, Inc. ("Robbins") (collectively, "defendants") violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and Sections 2(a) and 2(e) of the Clayton Act, 15 U.S.C. §§ 13(a) and 13(e), by "possessing, exploiting, and maintaining a monopoly" in the hardwood flooring market of the Territory.  First Amended Complaint ¶ 32.

Presently before the Court is defendants' Amended Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Texas.  For the reasons set forth below, the Court grants the Amended Motion; the case is transferred to the United States District Court for the Northern District of Texas.

## I.      BACKGROUND

### A.      The Parties and The Texas Litigation

Bolick is a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in Baton Rouge, Louisiana.  Id. ¶ 1.  Bolick purchases hardwood flooring "for resale to dealers, and, ultimately, consumers."  Id.  Defendant AHI is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.  AHI's headquarters is in Lancaster, Pennsylvania.  AHI, a non-party, was formed in May 2000 as the "parent holding company" of Armstrong World Industries ("AWI") and AWI's subsidiaries.[2]  Pl's Resp. to Defs' Mtn. to Transfer at Ex. 1.  AHI owns 100% of the stock of AWI, a Pennsylvania corporation; it engages in no other activity.

In 1998, prior to the formation of AHI, AWI acquired Triangle Pacific Corp. ("TriPac")

---

[2] AWI filed a Petition in Bankruptcy under Chapter 11 of the Bankruptcy Code on December 6, 2000 in the District of Delaware.

(the "TriPac acquisition"). The TriPac acquisition gave AWI "at least seventy-five percent (75%) of all hardwood flooring sold in the Territory, including at least ninety percent (90%) of all hardwood flooring having grade and quality above entry-level sold in the Territory, and including at least ninety percent (90%) of all hardwood flooring having brand name recognition in the Territory." First Amended Complaint ¶ 20. At the time of its acquisition, TriPac's principal place of business was Addison, Texas.[3]

TriPac operated as a subsidiary of AWI; its name was changed to AWP in 2001. Id. ¶ 19. Defendant AWP, wholly owned by AWI, is a Delaware corporation with its principal place of business in Addison, Texas. AWP manufactures, sells, and distributes hardwood flooring and other floor covering products. AWP "manages its sales, marketing, pricing, and claims" from its office in Addison, Texas. Defs' Mtn. to Transfer at 2.

Defendant Robbins was a subsidiary of TriPac at the time TriPac was acquired by AWI, and is now a subsidiary of AWP. Robbins is a Delaware corporation with its principal place of business in Addison, Texas. Robbins manufactures its own brand of hardwood flooring products for distribution. Its management, and marketing, sales, manufacturing, information technology, credit and claims departments are located in Addison, Texas. See Affidavit of Donald Fetzer ¶¶ 5-9, 12.

Bolick is a former distributor of Robbins' hardwood flooring products in the Territory. It was one of several distributors that Robbins used to sell its products in the Territory. Bolick was terminated as a Robbins distributor "in early 2002." Id. at 3. At the time of Bolick's termination,

---

[3] Addison, Texas is a suburb of Dallas, Texas. Both cities are located in the Northern District of Texas.

3

a dispute arose between Bolick and Robbins over payment for hardwood flooring products purchased by Bolick from Robbins. On May 28, 2002, Robbins filed suit against Bolick in the United States District Court for the Northern District of Texas to recover the unpaid balance and counsel fees (the "Texas litigation").[4] Judge Barefoot Sanders granted Robbins' Motion for Partial Summary Judgment on March 18, 2003 and ordered Bolick to pay Robbins over $175,000 in "collection damages" and reasonable attorneys' fees. See Robbins Hardwood Flooring v. Bolick Distribs., Civil No. 3:02-CV-1124-H, 2003 U.S. Dist. LEXIS 4149 (N.D. Tex. March 18, 2003). That case is now closed.

### B. The Amended Complaint

Bolick initiated the instant suit on July 23, 2002, several weeks after the commencement of the Texas litigation by Robbins. Bolick filed an Amended Complaint on October 10, 2002. In Count 1 of the Amended Complaint, Bolick alleges, inter alia, that since the TriPac acquisition in 1998 by AWI – which gave AWI "monopoly power" in the Territory's hardwood flooring market – defendant AWP – formerly TriPac – has "willfully maintained [that] monopoly power in the market through systematic price manipulation and through preventing distributors from dealing with other hardwood flooring manufacturers." First Amended Complaint ¶ 28. Bolick also alleges that since its inception in May 2000, defendant AHI, as AWP's parent, has engaged in the same anti-competitive conduct. Id. ¶ 29. Bolick claims that such conduct by defendants AHI and AWP "substantially and unreasonably harmed competition in the [hardwood flooring] market" and "injured Bolick in its business and ability to purchase and sell hardwood flooring" in violation

---

[4] In that suit, Bolick conceded that venue was proper in the Northern District of Texas because it transacted business with Robbins in that district.

of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.[5]  Id. ¶ 39.

Count 2 of the Amended Complaint alleges that defendants have engaged in price discrimination in violation of Section 2(a) of the Clayton Act, 15 U.S.C. § 13(a).[6] According to that complaint, defendants AHI and AWP sold two hardwood flooring products – Hartco Beaumont[7] and Robbins Austin Plank – to Bolick's competitors – certain distributors of Hartco and Robbins' flooring products in the Territory – at "substantially lower prices" than the prices for the same flooring products sold to Bolick and other non-favored distributors in the Territory, thereby placing Bolick and those other distributors at a competitive disadvantage. Id. ¶¶ 44-46, 48-49. Specifically, Bolick alleges that this "disparate pricing" policy harmed Bolick's ability to resell hardwood flooring in the market, "forced" other distributors out of that market, and posed

---

[5] Section 2 of the Sherman Antitrust Act states, in pertinent part, that no person "shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ... " 15 U.S.C. § 2.

[6] Section 2(a) of the Clayton Act, as amended by the Robinson-Putnam Act, states, in relevant part, that:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. § 13(a).

[7] This product is manufactured by Hartco Flooring Company ("Hartco"), a subsidiary of defendant AWP, and a non-party to the instant action.  Hartco's principal office is in Addison, Texas.  Like Robbins, Hartco manufacturers its own brand of hardwood flooring products and uses its own distributors to sell these products.  Bolick was not a distributor of Hartco products.

"substantial barriers to entry" for other manufacturers. Id. ¶¶ 49-50, 52, 57. Count 3 of the Amended Complaint alleges that defendants furnished three other Territory distributors,[8] but not Bolick, with "services and facilities" – including waiver of fees to join Robbins' "Regency Program,"[9] incentive programs offered by Robbins, and marketing and promotional assistance – in connection with their purchase and resale of defendants' hardwood flooring, in violation of Section 2(e) of the Clayton Act.[10] Id. ¶¶ 61, 62.

## II.   DISCUSSION

Defendants seek to transfer the instant action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). In their Amended Motion to Transfer, defendants argue that the convenience of the parties and witnesses, and the interest of justice "dictate" a transfer to the Northern District of Texas because, inter alia, no operative facts occurred in the Eastern District of Pennsylvania, the material events giving rise to this suit occurred in the Northern District of Texas, no material witnesses or evidence are located in the Eastern District of Pennsylvania,

---

[8] Those distributors are Brandon Company ("Brandon"), Building Plastics, Inc. ("BPI"), and Southern Wholesale Flooring, Inc. ("SWF").

[9] This is a rebate program offered by Robbins to some of its distributors.

[10] Section 2(e) of the Clayton Act, as amended by the Robinson-Putnam Act, provides, in pertinent part, that:

> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contribution to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

15 U.S.C. § 13(e).

plaintiff is not a resident of the Eastern District of Pennsylvania, and two of the three defendants reside in the Northern District of Texas. Defs' Mtn. to Transfer at 5. Moreover, defendants contended in their Amended Motion that the Texas litigation, which was pending at the time they filed the motion on October 17, 2002, lent further support to their argument because the Texas litigation involved many of the same operative facts that gave rise to Bolick's antitrust claims.

Notwithstanding the fact that the Texas litigation has been resolved by summary judgment, for the reasons set forth below, the Court concludes that the instant case should be transferred to the Northern District of Texas and grants defendants' Amended Motion to Transfer.

### A.    The Standard of Review Under Section 1404(a)

Section 1404(a) authorizes a district court to transfer a case to any other district where the suit "might have been brought," "[f]or the convenience of the parties and witnesses, in the interest of justice ... " 28 U.S.C. § 1404(a). "The purpose of Section 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 525-26 (D.N.J. 2000). The moving party bears the burden of establishing the need for a transfer by demonstrating that "(1) the case could have been brought initially in the proposed transferee forum, (2) the proposed transfer will be for the convenience of the parties, (3) the proposed transfer will be in the interests of the convenience of the witnesses, and (4) the proposed transfer will be in the interests of justice." Miller v. Consol. Rail Corp., 196 F.R.D. 22, 24-25 (E.D. Pa. 2000); see also Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The transfer analysis is not limited, however, to these factors. The decision to transfer venue under 28 U.S.C. § 1404(a)

must incorporate "all relevant factors to determine whether on balance the litigation [will] more conveniently proceed and the interests of justice be better served by transfer to a different forum." SmithKline Beecham Corp. v. Geneva Pharms., Inc., Civ. A. No. 99-2926, 2000 WL 217642, at *1 (E.D. Pa. Feb. 11, 2000) (quoting Jumara, 55 F.3d at 879) (citation omitted).

      1.    The Instant Matter Could Have Been Brought in the Northern District of Texas

The transferee forum proposed by defendants in the instant action is the Northern District of Texas. As a preliminary matter, it must be determined whether that proposed venue is one in which this case "might have been brought." 28 U.S.C. § 1404(a); see also Environ Prods., Inc. v. Total Containment, Inc., et. al., Civ. A. No. 94-7118, 1996 WL 184468, at *2 (E.D. Pa. April 11, 1996) ("The threshold issue [under § 1404(a)] is whether the proposed transferee district is one in which the action might have been brought originally.") (citing Hoffman v. Blaski, 363 U.S. 335, 342-344 (1960)); In re All Terrain Vehicles Litigation, 1989 WL 30948, at *6 (E.D. Pa. Feb. 23, 1989) ("Essentially, [under § 1404(a)] the plaintiff must have been able to commence an action originally in the transferee forum."). For federal cases such as the instant matter, venue is governed by 28 U.S.C. § 1391(b).

Subsection (b) of the general venue statute, 28 U.S.C. § 1391, provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). For purposes of determining proper venue under this statute, a defendant

corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c).

In the instant case, venue is proper in the Northern District of Texas because that is where "a substantial part of the events or omissions giving rise to" Bolick's claims occurred. 28 U.S.C. § 1391(b). Counts 2 and 3 of the Amended Complaint directly relate to the pricing and distribution activities of defendant Robbins and non-party Hartco, both of which have their principal place of business in Addison, Texas. Decisions and policies as to pricing, terms, and "services and facilities" provided in connection with the distribution of Robbins and Hartco flooring products in the Territory – including pricing, terms, and promotional assistance offered by Robbins to Bolick – were made and administered at Robbins and Hartco's principal offices in Addison, Texas. See Affidavit of Donald Fetzer ¶¶ 5-13, 17, 19; Affidavit of Andrew Hash ¶¶ 6, 7. Furthermore, as to Count 3, incentive and promotional programs, including Robbins' "Regency Program," offered to such distributors as Brandon, BPI, and SWF, and allegedly not offered to Bolick, were developed and implemented from Robbins' principal office in Addison, Texas. See Affidavit of Donald Fetzer ¶¶ 13, 17.

In addition, Count 1 of the Amended Complaint alleges that defendants AHI and AWP wilfully maintained monopoly power in the Territory's hardwood flooring market since the TriPac acquisition in 1998. Although the TriPac acquisition is not alleged as a violation of Section 2 of the Sherman Antitrust Act, it is important to the Court's analysis of whether substantial events giving rise to that alleged antitrust violation occurred in the Northern District of Texas because it is that acquisition which allegedly gave defendants "monopoly power" Bolick claims defendants have unlawfully maintained.

9

When TriPac was acquired in 1998 by non-party AWI, its principal place of business was Addison, Texas. According to defendants' evidence, most, if not all, of the "key negotiations and decisions," communications, meetings, records, and "due diligence" related to the TriPac acquisition occurred in the Northern District of Texas. Affidavit of Andrew Hash ¶ 6. Bolick attempts to dispute this by arguing that because AWI's headquarters is in Lancaster, Pennsylvania, most or all of the decisions regarding the acquisition of TriPac "must have" occurred there – " ... decisions [to acquire TriPac] were also most likely predicated upon information compiled by and presented to AWI's Board of Directors in Lancaster ... Thus, by implication, AWI must have conducted and approved its acquisition decisions outside of Texas, at its corporate facilities in Pennsylvania." Pl's Resp. to Defs' Mtn. to Transfer at 9.

Bolick's assertions on this issue, at best, are based on unsubstantiated inference and conjecture. Bolick has not provided any evidence to support its conclusory statements that operative facts regarding TriPac's acquisition by AWI "must have" occurred in Lancaster, Pennsylvania, or to contradict the averments set forth in defendants' affidavits as to material events in the Northern District of Texas surrounding that acquisition. In short, the only asserted link between this suit and the Eastern District of Pennsylvania is speculative and too attenuated to be considered "substantial," especially in light of the fact that AWI is not a party.

The Court concludes that venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b).[11] The Court must now decide whether transfer of this matter to the Northern

---

[11] Because the Court has concluded venue to be proper in the Northern District of Texas under the general venue statute, 28 U.S.C. § 1391(b), it need not discuss the special venue provision for antitrust cases, Section 12 of the Clayton Act. Section 12 authorizes venue over a corporation in "any district wherein it may be found or transacts business." 15 U.S.C. § 22. That special venue provision supplements, not supersedes, the general venue provisions of 28 U.S.C.

District of Texas is appropriate.

>   2. Transfer of the Matter to the Northern District of Texas is Appropriate Based on the Convenience of the Parties and Witnesses and the Interest of Justice

The Court, in determining whether a transfer is appropriate based on the convenience of the parties and witnesses and the interest of justice, considers a number of both private and public interests. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). "Private interests" include the plaintiff's choice of forum, relative ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and the cost of securing the attendance of willing witnesses. See id. Other private interests may include the preference of defendant, whether the claim arose elsewhere, and the location of books and records. See Jumara, 55 F.3d at 879. "Public interests" include court congestion and other administrative difficulties, local interests in deciding local controversies at home, and "practical considerations that could make the trial easy, expeditious, or inexpensive." Id.; see also Gulf Oil, 330 U.S. at 508-09. The Court's "individualized" analysis of these factors in determining whether transfer is appropriate is "flexible and turns on the particular facts of the case." Evans v. Merck & Co., Inc., Civ. A. No. 01-4820, 2002 WL 89622, at *2 (E.D. Pa. Jan. 23, 2002) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-30

---

§ 1391(b). See Born v. Iannacone, Civ. A. No. 97-5607, 1998 WL 297621, at *4 (E.D. Pa. June 3, 1998) (stating that Congress provided Section 12 to "supplement § 1391"); Daniel v. Am. Bd. of Emergency Med., 988 F. Supp. 127, 255-56 (W.D.N.Y. 1997) ("In applying the antitrust venue provisions, courts have concluded that Congress' intent was to enlarge plaintiff's choice of forum by reading the Clayton Act's venue provisions as supplemental to, rather than superseding, the general venue provisions."). Thus, venue in the Northern District of Texas "may be authorized under either section 12 or under the general federal venue provisions of 28 U.S.C. § 1391(b)." Kingsepp v. Wesleyan Univ., 763 F. Supp. 22, 28 (S.D.N.Y. 1991); see also Paper Sys. Inc. v. Mitsubishi Corp., 967 F. Supp. 364, 366-67 (E.D. Wis. 1997) (stating that plaintiff may rely on the general venue statute without satisfying Section 12's venue provisions).

(1988)).

The burden is on defendants to show the proposed transferee forum is not only adequate, but also more appropriate than the present forum. See Jumara, 55 F.3d at 879. Defendants must establish that their "alternative forum is more convenient; if factors are in equipoise, transfer is not proper." Superior Precast, Inc. v. Safeco. Ins. Co. of Am., 71 F. Supp. 2d 438, 446 (E.D. Pa. 1999). Defendants "must submit sufficient information in the record to facilitate the appropriate analysis and to meet its burden of persuasion. This inquiry does not, however, necessarily require extensive investigation. The inquiry into the interests of the parties may be resolved by an examination of the affidavits submitted by the parties. From that basis, the contentions of the parties and the relevant private and public interests must be considered and balanced." Liggett, 102 F. Supp. 2d at 529 (internal citations omitted).

a. Private Interests

The relevant private interests in the instant matter are Bolick's choice of forum and the convenience of the available districts with regard to sources of proof, namely, the witnesses and documentary evidence.

i. Plaintiff's Choice of Forum

The choice of forum by a plaintiff is generally of "paramount concern" in deciding a transfer motion. See Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 633 (3d Cir. 1989). Ordinarily, the plaintiff's choice of forum is entitled to great weight and will rarely be disturbed. See Gulf Oil, 330 U.S. at 508; Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 341 (E.D. Pa. 2001) ("Plaintiff's choice of forum is [a] significant consideration that should not be disturbed lightly.") (citations omitted). However, there are certain circumstances where plaintiff's

choice of forum is afforded less weight. When a plaintiff chooses a forum other than its home forum that choice receives "less deference." See Kielczynski v. Consol. Rail Corp., 837 F. Supp. 687, 689 (E.D. Pa. 1993) (stating that a plaintiff's choice of forum "should be given considerably less weight" when that forum is not plaintiff's home forum). Another situation where less deference is afforded to plaintiff's chosen forum is where that forum has "little connection with the operative facts of the lawsuit." Liggett, 102 F. Supp. 2d at 530; see also Fidelity Leasing, Inc. v. Metavec Corp., Civ. A. No. 98-6035, 1999 WL 269933, at *3 (E.D. Pa. Apr. 29, 1999) ("[A] plaintiff's choice of forum receives less weight where none of the operative facts occurred in the selected forum.").

Bolick's home forum is not the Eastern District of Pennsylvania, but the Middle District of Louisiana. Therefore, Bolick's choice of forum is afforded less weight. In addition, the deference given to Bolick's choice of forum is "further diluted" because the Eastern District of Pennsylvania has "little connection with the operative facts of the lawsuit." Id. at 531. As discussed above, a substantial portion of the operative facts giving rise to Bolick's antitrust claims occurred in the Northern District of Texas. Bolick can only rely on the fact that AWI, a non-party, resides in Pennsylvania in arguing that some operative facts "must have" occurred in the Eastern District of Pennsylvania because TriPac was acquired by AWI. As the Court previously concluded, that argument is speculative and conclusory. It is also of little relevance to the Court's transfer inquiry since AWI is not a party to this suit. Moreover, notwithstanding the fact that AHI's headquarters is in the Eastern District of Pennsylvania, that fact alone has nothing to do with whether there is any link between the operative facts of Bolick's claims and the Eastern District of Pennsylvania.[12]

---

[12] The Court notes that defendant AHI is currently in the process of dissolution.

See Evans, 2002 WL 89622, at *3.  The fact that AHI resides in the Eastern District of Pennsylvania is "a probative pittance, compared to the rest of the case." Fidelity, 1999 WL 269933, at *2.

The gravamen of Bolick's antitrust claims involve events occurring in the Northern District of Texas, see supra II.A.1, and the operative facts for this litigation are not centered in, much less connected to, the Eastern District of Pennsylvania.  See id.  Any links with the Eastern District of Pennsylvania are superficial and much too attenuated to warrant any weight.  Thus, Bolick's chosen forum, the Eastern District of Pennsylvania, is entitled to significantly less deference.

          ii.        Access to Proof – Witnesses and Documents

The second relevant factor under the private interests analysis is the convenience of the available districts concerning witnesses and documentary evidence of both parties.  Although fact-witnesses have not yet been specifically identified by defendants[13], affidavits aver that most of the relevant witnesses in this action reside in the Northern District of Texas, or within a 100-mile radius of the federal courthouse in Dallas, Texas.[14]  All persons who were responsible for selecting distributors for the flooring products of AWP, Robbins, and Hartco currently reside in

---

[13] The Court was recently advised that two witnesses, Andrew Hash and Donald Fetzer, employees of defendants AWP and Robbins, respectively, who submitted affidavits in support of defendants' Amended Motion to Transfer, may be moving from Texas to Pennsylvania in the next several months.  That development, however, does not change the Court's determination as to the convenience of witnesses because, on the present state of the record, most of the witnesses reside in the Northern District of Texas, or within a 100-mile radius of the federal courthouse in Dallas, Texas.

[14] See FED. R. CIV. P. 45(b)(2) (providing that a subpoena compelling a witness to appear at trial may only be served within 100 miles of the courthouse where the trial is being held).

the Northern District of Texas, or within a 100-mile radius of the federal courthouse in Dallas, Texas.[15] See Affidavit of Andrew Hash ¶¶ 8-10. Further, persons with knowledge of the geographic sales and the market of flooring products manufactured by AWP, Robbins, and Hartco are located in Addison, Texas. Id. ¶ 12. Moreover, persons with knowledge concerning the details of, and differences in, the products manufactured by these entities reside in the Northern District of Texas, or within 100-miles of the federal courthouse in Dallas, Texas. Id. ¶ 11.

In addition, most potential witnesses who know of Robbins' operations and distribution activities in the Territory are located in Addison, Texas. See Affidavit of Donald Fetzer ¶ 14. That is significant because Robbins is the only named defendant with which Bolick has transacted business. Nine of those potential witnesses – current or former employees of Robbins – with knowledge concerning Bolick's claims against Robbins (Counts 2 and 3) presently reside in the Northern District of Texas, or within a 100-mile radius of the federal courthouse in Dallas, Texas. Id. ¶¶ 20-24.

Bolick's declarations aver that two of its officers – its President and Vice-President – reside in Maryland, within a 100-mile radius of Philadelphia, Pennsylvania, where this Court sits, and that traveling to the Northern District of Texas for trial would be unduly burdensome for them. See Declaration of William Kutun ¶ 6; Declaration of Timothy O'Neill ¶ 6. Although these potential witnesses may suffer some inconvenience in traveling to the Northern District of Texas to testify, Bolick has provided no evidence demonstrating "hardship" for these witnesses. See Miller, 196 F.R.D. at 26. Thus, notwithstanding any inconvenience to Bolick's two officers in having to travel to Texas, the Court concludes that the convenience of witnesses of both parties –

---

[15] See supra note 3 (stating that Dallas, Texas is located in the Northern District of Texas).

factoring in the availability of compulsory process over unwilling witnesses under FED. R. CIV. P. 45(b)(2) – favors a transfer to the Northern District of Texas.

As to documentary evidence, the Court reaches the same conclusion. Affidavits aver that all of Robbins' records, written communications, and other documents regarding its relationship with Bolick and other distributors in the Territory, such as Brandon, BPI, and SWF, are located in Addison, Texas. See Affidavit of Donald Fetzer ¶ 17. Those documents directly relate to the gravamen of Bolick's antitrust claims. Bolick has failed to provide any evidence to the contrary, or to offer any evidence of records located in the Eastern District of Pennsylvania. Accordingly, the Court agrees with defendants that, on the present state of the record, "a substantial amount of [documentary] evidence is likely housed" in the Northern District of Texas, and concludes that the Northern District of Texas is a more convenient forum as to accessing such evidence. Siegel v. Homestore, Inc., Civ. A. No. 02-8275, 2003 WL 1786221, at *5 (E.D. Pa. Mar. 19, 2003). "Although it is certainly possible that relevant documents could be transported [from Texas] to Pennsylvania for trial, it is indisputably easier to arrange for their transport inter-state." Id.

      b.      Public Interests

In addition to the private interests, public interests will be served by transferring venue to the Northern District of Texas. That district has a far greater interest in adjudicating Bolick's claims than the Eastern District of Pennsylvania because the claims involve the alleged anti-competitive activities of two defendants whose principal place of business is in the Northern District of Texas. Moreover, if venue is not transferred to the Northern District of Texas, jury duty will be imposed on the citizens of Pennsylvania who have little or "no relation to the litigation." Watt v. Consol. Rail Corp., Civ. A. No. 97-2203, 1997 WL 288607, at *2 (E.D. Pa.

16

May 21, 1997). Further, in light of the fact that: (1) most of the witnesses to the alleged antitrust activities of defendants reside in the Northern District of Texas, or within a 100-mile radius of the federal courthouse in Dallas, Texas; (2) most of the relevant documents are located within that district; (3) both parties' lead attorneys are located within that district; (4) the Territory is geographically closer to the Northern District of Texas than to the Eastern District of Pennsylvania; and (5) Bolick's principal place of business, Louisiana, is geographically closer to the Northern District of Texas, transferring this litigation to the Northern District of Texas would make trial "easier, more expeditious, and less expensive than if it were tried here in the Eastern District of Pennsylvania." Evans, 2002 WL 89622, at *3.

The Court concludes that, based on an examination of the parties' contentions and submissions, and considering the relevant private and public interests, the Northern District of Texas is a more convenient forum for this case. Accordingly, the Court grants defendants' Amended Motion to Transfer.

### III.  CONCLUSION

For the foregoing reasons, based on the convenience of the parties and witnesses, and in the interest of justice, the Court grants defendants' Amended Motion to Transfer pursuant to 28 U.S.C. § 1404(a) and transfers this matter to the Northern District of Texas.

**BY THE COURT:**

_____

**JAN E. DUBOIS, J.**